IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAYMOND ZARECK,                       )
                                      )
              Petitioner,             )        Criminal No. 09-168
                                      )
         v.                           )
UNITED STATES OF AMERICA.             )
                                      )

## OPINION

CONTI, Senior District Judge

### I.    Introduction

Pending before the court is a motion to amend or alter judgment, correct factual errors and oversight of law, and reconsider issuing certificate of appealability, pursuant to Federal Rules of Civil Procedure 52(b) and 59(e) (ECF No. 391) ("motion for reconsideration"), filed by petitioner Raymond Zareck ("Zareck"). This court in an opinion dated September 23, 2021, (the "2021 opinion") denied Zareck's motion to vacate his conviction and sentence filed under 28 U.S.C. § 2255 (ECF No. 348) ("§ 2255 motion") in which he raised thirty-six grounds for relief. Zareck argues that the court should reconsider its decision with respect to ground twenty-three raised in his § 2255 motion to "correct a clear error of law or fact or to prevent a manifest injustice." (ECF No. 391 at 2.) The government opposes Zareck's motion. (ECF No. 396.) For the reasons set forth in this opinion, the motion for reconsideration will be denied. Zareck did not satisfy his burden to show that reconsideration or correction of any finding or holding by this court in the 2021 opinion is warranted and that a certificate of appealability should issue.

### II.    Procedural History

On May 13, 2009, a federal grand jury returned a one-count indictment against Zareck

charging him with possession of a firearm by a convicted felon on or about April 4, 2009, in violation of 18 U.S.C. § 922(g)(1). On November 25, 2009, Zareck filed, among other motions, a motion to suppress evidence ("first suppression motion"). (ECF No. 37.) In the first suppression motion, Zareck raised three arguments: (1) the search of his vehicle was conducted without a warrant, probable cause, or exigent circumstance, thereby violating his constitutional rights under the Fourth Amendment to the Constitution of the United States; (2) he made statements while in police custody relating to the purchase or assembly of firework or improvised explosive devices without first being read his Miranda warnings, which violated his constitutional rights under the Fifth Amendment to the Constitution of the United States; and (3) the search of his residence was premised on a fatally flawed affidavit of probable cause, thereby violating his constitutional rights under the Fourth Amendment to the Constitution of the United States. (ECF No. 143 at 1.)

On May 27, 2010, and June 29, 2010, the court held a hearing on Zareck's pretrial motions, including his motion to suppress. James Wintruba ("Wintruba"), a police officer for the Homestead Police Department, testified on behalf of the government and was subject to cross-examination by Zareck's counsel. Wintruba authored the affidavit of probable cause upon which a search warrant was issued for Zareck's home. During the execution of that warrant a firearm and ammunition were seized.

On July 2, 2010, Zareck filed a "Motion for Franks hearing" ("Franks motion"), pursuant to Franks v. Delaware, 438 U.S. 154 (1978). (ECF No. 84.) On July 22, 2010, the court held a hearing to determine whether a Franks hearing should be held. The court—relying upon Wintruba's testimony from the suppression hearing—explained the Franks motion would be denied and a Franks hearing would not be held.

On December 3, 2010, after the parties filed proposed findings of fact and conclusions of law, the court issued a memorandum opinion and order denying the motion to suppress. (ECF No. 108.) The court found, among other things, that the search warrant issued by an Allegheny County district justice for Zareck's home, pursuant to which law enforcement found a firearm and ammunition, was supported by probable cause and there was no basis to suppress the evidence of the gun, which was found in plain view during the search of Zareck's home. (ECF No. 108 at 33.)

On December 22, 2010, Zareck filed a "supplemental" motion to suppress in which he raised the following four arguments: (1) his arrest was illegal because the police officers did not have probable cause to arrest him on a misdemeanor; (2) the arrest was illegal because it was based upon information provided by an informant who was not a credible or reliable source of information; (3) the stop of Zareck's vehicle was pretextual and therefore without reasonable suspicion or probable cause; and (4) the government should be compelled to reveal the informant's identity. (ECF No. 111.) On February 25, 2011, March 7, 2011, and May 2, 2011, the court held an evidentiary hearing on the supplemental motion to suppress. Matthew Fusco, a police officer with the Homestead Police Department, and Wintruba testified and were subject to cross examination by Zareck's counsel. On October 26, 2011, after the parties filed proposed findings of fact and conclusions of law, the court in an opinion and order denied the supplemental motion to suppress. (ECF No. 143.)

On June 14, 2012, Zareck filed a motion for reconsideration with respect to this court's decision to deny his request for a Franks hearing. (ECF No. 174.) Zareck submitted with his motion for reconsideration an affidavit from Frederic W. Whitehurst, J.D., Ph.D. ("Whitehurst"). The government opposed the motion. (ECF No. 180.) On July 12, 2012, this court filed an

opinion and order granting in part and denying in part the motion for reconsideration. (ECF No. 186.) The court granted the motion to the extent Zareck was entitled to reconsideration in light of Whitehurst's affidavit, but denied the motion in all other respects and held Zareck was not entitled to a Franks hearing. (Id.)

After additional motions practice and various continuances, this case was set for a jury trial to commence on August 6, 2012. On August 1, 2012, however, a federal grand jury returned a two-count superseding indictment against Zareck, charging him with: (1) possession of a firearm and/or ammunition by a convicted felon, in and around 2004 through April 4, 2009, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); and (2) possession of a firearm and/or ammunition by an unlawful user of a controlled substance, in and around 2004 through April 4, 2009, in violation of 18 U.S.C. § 922(g)(3). (ECF No. 195.) On August 28, 2012, Zareck filed various pretrial motions, including motions to dismiss the superseding indictment and motions for reconsideration of the court's decisions to deny the suppression motion and Franks motion. (ECF Nos. 206-210, 220-221.)

On November 9, 2012, the court held a pretrial motions conference during which it denied Zareck's pretrial motions. On November 13, 2012, a jury trial commenced against Zareck. On November 20, 2012, the jury returned a verdict of guilty on each of counts one and two of the superseding indictment. (ECF No. 243.) On May 21, 2013, the court sentenced Zareck to a term of imprisonment of 188 months[1] at each of counts one and two of the superseding

---

[1]   The applicable sentencing guideline range for a term of imprisonment was 188 months to 235 months.  (Amended Judgment dated 1/25/2016 at 7; Judgment dated 5/17/2013 at 7.) Zareck was subject to a mandatory term of imprisonment of 15 years, pursuant to 18 U.S.C. §§ 922(g)(1) and 924(e).

indictment, to concurrently run, for a total term of imprisonment of 188 months, and a term of supervised release of five years at each of counts one and two of the superseding indictment, to concurrently run, for a total term of supervised release of five years. (ECF No. 275.)

On May 23, 2013, Zareck appealed his convictions and sentences to the Third Circuit Court of Appeals. (ECF Nos. 277, 278.) On July 24, 2015, the court of appeals affirmed petitioner's convictions, but vacated the judgment of sentence because this court erred when it imposed a sentence at each of counts one and two. (ECF No. 310 at 2.) In accordance with the court of appeals' decision, count two was merged into count one. (ECF No. 328.) On January 25, 2016, the court resentenced petitioner to, among other things, a term of imprisonment of 188 months at count one and a term of supervised release of five years at count one. (ECF No. 329.)

On January 29, 2016, petitioner appealed his new sentence. (ECF No. 331.) On September 29, 2016, the court of appeals affirmed the judgment of sentence entered by this court. (ECF Nos. 335, 336.) On November 3, 2016, the Third Circuit Court of Appeals denied petitioner's request for rehearing. (Court of Appeals for the Third Circuit, Docket No. 16-1215, Order dated November 3, 2016.) On November 11, 2016, petitioner submitted a "notice of appeal" of his sentence. (ECF No. 337.) The court of appeals did not act on that notice.[2] (ECF

---

[2]     The Clerk of the Court of Appeals for the Third Circuit explained:

No action will be taken on the foregoing document which was transmitted to this Court by the United States District Court for the Western District of Pennsylvania as a new notice of appeal. Appellant seeks review from final judgment of Appellant's sentence decided November 3, 2016. The November 3, 2016 order was entered by this Court in the above-docketed case and denied Appellant's petition for en banc rehearing and panel rehearing. As previously advised by the Clerk in a letter dated November 18, 2016, any further review of this Court's decision must be sought in the United States Supreme Court.

(ECF No. 338 at 2.)

No. 338 at 2.)

On February 1, 2017, Zareck filed in the Supreme Court of the United States a petition for writ of certiorari. (Court of Appeals for the Third Circuit, Docket No. 16-1215, Notice dated February 8, 2017.) On March 6, 2017, the Supreme Court of the United States denied Zareck's petition for writ of certiorari. (Court of Appeals for the Third Circuit, Docket No. 16- 1215, Notice dated March 6, 2017.) On February 23, 2018, the Third Circuit Court of Appeals denied Zareck's "Recall Mandate and Amend Judgment of Appeal with Appointment of New Counsel for Failure of CJA Counsel to File Petition Upon Petitioner's Request and Timely Withdraw Pursuant to 18 U.S.C.S Section 3006A and Third Circuit CJA Plan[.]" (Court of Appeals for the Third Circuit, Docket No. 16-1215, Order dated February 23, 2018.)

On March 6, 2018, petitioner filed in this court a motion to vacate under 28 U.S.C. § 2255. (ECF No. 340.) On March 9, 2018, petitioner filed a motion to supplement his § 2255 motion. (ECF No. 342.) On April 20, 2018, the government filed a motion requesting the court to issue a notice to petitioner pursuant to United States v. Miller, 197 F.3d 644, 649 (3d Cir. 1999). (ECF No. 344.) On May 2, 2018, the court issued a Miller notice in the form provided by the government in which one sentence referred to petitioner by an incorrect name. (ECF No. 345.) On May 11, 2018, petitioner filed a motion for clarification and extension of time. (ECF No. 346.) On June 8, 2018, petitioner filed a second motion for clarification. (ECF No. 347.) On June 20, 2018, petitioner—in an effort to comport with the court's order dated May 2, 2018—filed a second amended § 2255 motion (the "second amended § 2255 motion"), which, according to petitioner, reasserted the claims he raised in the initial § 2255 motion and the motion to supplement. (ECF No. 348 at 12.)

On July 12, 2018, this court issued an opinion and order granting in part and denying in

part the motion for clarification and enlargement of time and denying as moot the second motion

for clarification. (ECF No. 349.) The court provided clarification with respect to the <u>Miller</u>

notice and explained that unless the government raised an objection to the timelines of Zareck's

filings, the first § 2255 motion and the supplement thereto would be denied as moot because

Zareck filed an all-inclusive document setting forth his thirty-six grounds for relief, which would

be considered the operable § 2255 motion in this case. (ECF No. 349 at 6-7.) The government

did not object to the timeliness of the all-inclusive document filed by Zareck, and, therefore, on

September 22, 2021, the court denied as moot the first § 2255 motion and the supplement thereto

was denied as moot. On October 25, 2018, the government filed a response in opposition to

Zareck's § 2255 motion.

On February 25, 2019, Zareck filed a motion for expansion of record (ECF No. 362) and

a reply in support of his § 2255 motion (ECF No. 363). On June 19, 2019, the government filed a

response to the motion for expansion of record. (ECF No. 372.) On August 28, 2019, Zareck

filed a reply in support of his motion for expansion of record. (ECF No. 375.)

On July 17, 2020, Zareck filed a motion for leave to supplement his § 2255 motion. (ECF

No. 376.) On January 5, 2021, the government filed a response in opposition. (ECF No. 383.) On

April 5, 2021, Zareck filed a reply in support of his motion for leave. (ECF No. 386.)

On September 23, 2021, the court issued the 2021 opinion and an accompanying order,

which, among other things, granted the motion to expand the record and denied the motion to

supplement the § 2255 motion. The court *after a thorough review of all the submissions* denied

Zareck's § 2255 motion and denied his request for the issuance of a certificate of appealability.

(ECF Nos. 389 and 390.) On October 1, 2021, Zareck filed a motion for extension of time to file

a motion for reconsideration, which this court granted. (ECF Nos. 392, 393.) On October 25,

2021, Zareck filed the pending motion for reconsideration. On November 30, 2021, the

government filed its response in opposition to the motion for reconsideration. (ECF No. 396.) On

February 1, 2022, Zareck filed a reply brief in support of the motion for reconsideration. (ECF

No. 399.)

The motion for reconsideration having been fully briefed is now ripe for disposition by

the court.

### III.    Applicable Law

### A.  Federal Rule of Civil Procedure 52(b)

Zareck filed the instant motion pursuant to Federal Rules of Civil Procedure 52(b) and

59(e). Federal Rule of Civil Procedure 52(b) provides:

> **(b) Amended or Additional Findings.** On a party's motion filed no later than 28
> days after the entry of judgment, the court may amend its findings--or make
> additional findings--and may amend the judgment accordingly. The motion may
> accompany a motion for a new trial under Rule 59.

FED. R. CIV. P. 52(b).

"Normally, parties seek R. 52(b) relief after a bench trial or where summary judgment

has been granted. However, a motion to amend the findings of fact and to amend the judgment is

appropriate in habeas proceedings, where the legal analysis may depend upon the underlying

facts in the case." Gutierrez v. Ashcroft, 289 F. Supp. 2d 555, 561 (D.N.J. 2003), aff'd on other

grounds sub nom. Gutierrez v. Gonzales, 125 F. App'x 406 (3d Cir. 2005).

One district court has explained:

> A court may amend its findings of fact or make additional findings and may
> amend the judgment accordingly upon motion of a party. Fed.R.Civ.P. 52(b). The
> primary purpose of Rule 52(b) is to ensure that the trial court's findings of fact and
> legal reasoning are clear, cover the essential factual and legal points, and will be
> understood by the appellate court, not to allow a party a second opportunity to prove

8

its case. 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2582 (1971). "The purpose of motions to amend is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence...." Kravco Co. v. Valley Forge Center Assocs., Civ.A. No. 91–4932, 1992 WL 5893, at *2 (E.D.Pa. Jan. 8, 1992) (quoting Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir.1986)). A Rule 52(b) motion to amend should not "be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." Id. A court will not amend its findings or judgment where a party essentially requests the court to completely rewrite its findings and reverse its judgment. Erickson Tool Co. v. Balas Collet Co., 277 F.Supp. 226, 234 (N.D.Ohio 1967), aff'd, 404 F.2d 35 (6th Cir.1968).

Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Plan & Tr. Agreement, 151 F.R.D. 49, 51 (E.D. Pa. 1993).

### B. Federal Rule of Civil Procedure 59(e)

Relief under Rule 52(b) is "substantially similar" to relief under Federal Rule of Civil Procedure 59(e). Guitierrez, 289 F.Supp.2d at 561. Indeed, "[t]he standard for altering or amending a court's order to make additional findings of fact or conclusions of law under Rule 59(e) is virtually the same as under Rule 52(b)." In re Reading Broad., Inc., 386 B.R. 562, 566 (Bankr. E.D. Pa. 2008) (citing decisions).

The Third Circuit Court of Appeals has explained that "[a] motion under Rule 59(e) is a 'device to relitigate the original issue' decided by the district court, and used to allege legal error." United States v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003) (quoting Smith v. Evans, 853 F.2d 155, 158 (3d Cir. 1988)). In other words, the purpose of a Rule 59(e) motion is "to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999) (citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)). A motion for reconsideration under Federal Rule of

Civil Procedure 59(e) must, therefore, rely on one of three grounds: (1) an intervening change in the law, (2) the availability of new evidence that was not available at the time of the judgment, or (3) the need to correct a clear error of law or prevent manifest injustice. Blystone v. Horn, 664 F.3d 397, 415 (3d Cir.2011); N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995).

### C. Section 2255 Motions Raising Ineffective Assistance of Counsel

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Under § 2255, there are four grounds upon which relief may be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States," (2) "that the court was without jurisdiction to impose such sentence," (3) "that the sentence was in excess of the maximum authorized by law," and (4) that the sentence "is otherwise subject to collateral attack."

CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 625 (5th ed. 2022) (quoting Hill v. United States, 368 U.S. 424, 426-27 (1962)). Section 2255 provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

"As a collateral challenge, a motion pursuant to [§ 2255] is reviewed much less favorably than a direct appeal of the sentence." United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014) (citing United States v. Frady, 456 U.S. 152, 167–68 (1982)). "Indeed, relief under § 2255 is

available only when 'the claimed error of law was a fundamental defect [that] inherently results in a complete miscarriage of justice, and... present[s] exceptional circumstances where the need for the remedy afforded by the writ...is apparent.'" Id. (quoting Davis v. United States, 417 U.S. 333, 346 (1974) (internal quotation marks omitted)).

A district court is required to hold an evidentiary hearing on a § 2255 motion if "the files and records of the case are inconclusive as to whether the movant is entitled to relief." United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005).  "[T]he court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." Id. at 545.  The court concludes that an evidentiary hearing is not necessary in this case because, as described below, based upon the file and records in this case Zareck is not entitled to relief.

To support a claim that counsel's assistance was so defective as to amount to a deprivation of one's Sixth Amendment right to effective assistance of counsel and require reversal of a conviction, a defendant must show two things: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused him prejudice. Williams v. Taylor, 529 U.S. 362, 390-91 (2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)); see Ross v. Dist. Att'y of the Cnty. of Allegheny, 672 F.3d 198, 210 (3d Cir. 2012).  To show deficient performance, the defendant must show that his or her counsel made errors so serious that his or her counsel was not functioning as the counsel guaranteed a defendant by the Sixth Amendment.  Ross, 672 F.3d at 210.

 "With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome." Harrington, 562 U.S. at 104.  It is not enough to show that counsel's errors had "some conceivable

effect on the outcome of the proceeding." Id. (citing Strickland, 466 U.S. at 693). If a court

determines that defendant did not suffer prejudice, it need not determine whether the performance

of the defendant's counsel was deficient. Marshall v. Hendricks, 307 F.3d 36, 87 (3d Cir. 2002)

(citing Strickland, 466 U.S. at 697)). Courts should generally address the prejudice prong first.

See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993).

### IV.   Discussion

####   A.  Zareck's Original Request for a Franks Hearing

As discussed fully in the 2021 opinion setting forth the reasons the § 2255 motion was

denied, the charges in this case stemmed from the execution of a search warrant issued by an

Allegheny County district justice. The search warrant authorized the search of Zareck's home

during which law enforcement seized a firearm and ammunition. In Zareck's § 2255 motion, he

argued, among other things, that his counsels were ineffective because they failed to make

certain arguments before this court and the Third Circuit Court of Appeals to challenge the

affidavit of probable cause authored by Wintruba upon which the Allegheny County district

justice relied to issue the search warrant for Zareck's home. Wintruba's affidavit of probable

cause provided:

> The Homestead Police Department was conducting a narcotic buy bust with
> in [sic] the borough of Homestead. Officers arrested Raymond J. Zareck with in
> [sic] his 2007 Chevrolet Malibu SDN at the Waterfront McDonalds. Officers
> observed a green fuse sticking out of the center console. Officers are familier [sic]
> with this type of fuse which is consistent with an improvised explosive device.
> Officers opened the center console & observed a pipe type object which was
> approximately 8″ long. The object was wrapped with tape & had glue on each end.
> A 12″ green fuse was sticking out of one end. The device appeared to be a
> homemade pipe bomb. Officers secured the area & contacted the Allegheny County
> Bomb Squad. Raymond Zareck was transported to WHPD then to HPB for
> processing. Zareck was mirandized and questioned regarding the improvised
> explosive device. Zareck stated to Ofc. Wintruba & Fusco that he purchases
> "Bumble Bee" commercial fireworks at Target Department Stores. Zareck then

takes the fireworks to his residence at 3379 Parkview Ave. Pittsburgh, PA 15213 disassembles them and creates improvised explosive devices. Zareck stated that he takes the flash powder out of several commercial fireworks and condenses the flash powder into one cardboard tube. He then applies a fuse and glue to each end. Finally he tapes the tube up with cloth tape. Zareck is unsure how much additional flash powder is with in [sic] his residence, but did state that it is not in any type of fire retardent [sic] cabinet nor does he have any type of automatic fire supression [sic] devices. Zareck's residence is a row house with multiple family residences on each side.

Homestead Police and Fire Departments evacuated the Waterfront McDonalds & Get Go gas station prior to the bomb squads [sic] arrival. Allegheny County Bomb Squad arrived on scene & took possession of the device. The device was transported to a vacant area on the Waterfront & detonated. Bomb Technicians Robert Synan & Mark Divelbiss advised officers that the device was infact [sic] an improvised explosive device. They went on to state that the flash powder Zareck is using in these types of devices is extremely volitile [sic] & dangerous. In addition, depending on how much flash powder is located with in [sic] Zareck's residence this could prove to be a dangerous and hazardous condition for the surrounding neighbors & the public. The technicians Synan & Divelbiss stated that they have had prior experience with bomb makers of this type. They stated that these bomb makers do not make just one improvised explosive device, but infact [sic] make several at a[sic] one time.

During officers [sic] interactions with Zareck he appeared to be unstable in his demeaner [sic] and possesses a violent criminal history, with multiple weapon and drug charges. While being interviewed at HPD Zareck assaulted officers, attempted to escape & attempted to destroy evidence. Officers managed to subdue Zareck, but not before he destroyed one piece of evidence.

Based on the above information and the advice of the Allegheny County Bomb Squad Technicians we respectfully request the issuance of a search warrant for the residence & curtilage located at 3379 Parkview Ave. Pittsburgh, PA 15213 for the safety of the public as a whole.

(Gov't Ex. 2 from the Suppression Hr'g (H.T. 5/27/2010 (ECF No. 85) at 31).)

Each of Zareck's trial counsels requested a hearing pursuant to Franks, to challenge the affidavit of probable cause because, according to Zareck, the affidavit of probable cause contained material misstatements and omissions knowingly or recklessly made by the Allegheny County Bomb Squad (the "bomb squad"). Zareck's first trial counsel raised the issue during the filing of

pretrial motions. This court issued findings of fact and conclusions of law and denied, among other motions, the motion for a <u>Franks</u> hearing. The findings of fact and conclusions of law assumed, without making a finding, that the affidavit of probable cause contained untruths (step one of the <u>Franks</u> analysis) and considered whether the affidavit of probable cause (step two of the <u>Franks</u> analysis), after excising the assumed untruths, provided the Allegheny County district justice a substantial basis for finding that there was a fair probability that evidence of a crime would be found in Zareck's home. The affidavit of probable cause with the excisions is shown below:

> The Homestead Police Department was conducting a narcotic buy bust with in [sic] the borough of Homestead. Officers arrested Raymond J. Zareck with in [sic] his 2007 Chevrolet Malibu SDN at the Waterfront McDonalds. Officers observed a green fuse sticking out of the center console. ~~Officers are familier [sic] with this type of fuse which is consistent with an improvised explosive device.~~ Officers opened the center console & observed a pipe type object which was approximately 8″ long. The object was wrapped with tape & had glue on each end. A 12″ green fuse was sticking out of one end. ~~The device appeared to be a homemade pipe bomb.~~ Officers secured the area & contacted the Allegheny County Bomb Squad. Raymond Zareck was transported to WHPD then to HPB for processing. Zareck was mirandized and questioned ~~regarding the improvised explosive device~~. Zareck stated to Ofc. Wintruba & Fusco that he purchases "Bumble Bee" commercial fireworks at Target Department Stores. Zareck then takes the fireworks to his residence at 3379 Parkview Ave. Pittsburgh, PA 15213 disassembles them ~~and creates improvised explosive devices~~. Zareck stated that he takes the ~~flash~~ powder out of several commercial fireworks and condenses the ~~flash~~ powder into one cardboard tube. He then applies a fuse and glue to each end. Finally he tapes the tube up with cloth tape. Zareck is unsure how much additional ~~flash~~ powder is with in [sic] his residence, but did state that it is not in any type of fire retardent [sic] cabinet nor does he have any type of automatic fire supression [sic] devices. Zareck's residence is a row house with multiple family residences on each side.
>
> Homestead Police and Fire Departments evacuated the Waterfront McDonalds & Get Go gas station prior to the bomb squads [sic] arrival. Allegheny County Bomb Squad arrived on scene & took possession of the device. The device was transported to a vacant area on the Waterfront & detonated. Bomb Technicians Robert Synan & Mark Divelbiss advised officers that the device was infact [sic] an improvised explosive device. They went on to state that the ~~flash~~ powder Zareck is using in these types of devices is extremely volitile [sic] & dangerous. In addition, depending on how much ~~flash~~ powder is located with in [sic] Zareck's residence

this could prove to be a dangerous and hazardous condition for the surrounding neighbors & the public. The technicians Synan & Divelbiss stated that they have had prior experience with bomb makers of this type. They stated that these bomb makers do not make just one improvised explosive device, but infact [sic] make several at a[sic] one time.

During officers [sic] interactions with Zareck he appeared to be unstable in his demeaner [sic] ~~and possesses a violent criminal history, with multiple weapon and drug charges~~. While being interviewed at HPD Zareck assaulted officers, attempted to escape & attempted to destroy evidence. Officers managed to subdue Zareck, but not before he destroyed one piece of evidence.

Based on the above information and the advice of the Allegheny County Bomb Squad Technicians we respectfully request the issuance of a search warrant for the residence & curtilage located at 3379 Parkview Ave. Pittsburgh, PA 15213 for the safety of the public as a whole.

(Gov't Ex. 2 from the Suppression Hr'g (H.T. 5/27/2010 (ECF No. 85) at 31) (modified).) The court in the findings of fact and conclusions of law explained that, even with the presumed untruths excised from the affidavit of probable cause, the Allegheny County district justice would have had a substantial basis to conclude there was a fair probability that evidence of a crime would be found in Zareck's home. The court explained:

"Mr. Zareck was saying he had some commercial firework material in his home, that he takes powder out of those fireworks and he then puts them together into one cardboard tube and he didn't know how much additional powder he had at his residence; but then you have the bomb squad being called, detonating the device, saying that it was an improvised explosive device, saying that the powder is extremely volatile and dangerous and that that could prove to be dangerous to the surrounding neighbors and public and they have had experiences with bomb makers in the past and the bomb makers do not just make one explosive device at a time, it [sic] makes several together."

(ECF No. 108 ¶ 50 (quoting ECF No. 93 at 34-35).)

Zareck's second trial counsel filed a motion for reconsideration of that decision and submitted an affidavit from Whitehurst, in which Whitehurst opined, among other things, that the bomb squad acted properly in presuming the device was an improvised explosive device and

detonating it, but should thereafter have conducted a chemical analysis of the contents of the device seized from Zareck's vehicle to conclude definitively the device was an improvised explosive device. Whitehurst noted the failure to retrieve the contents of the device after it was detonated by the bomb squad violated accepted protocol found in the U.S. Department of Justice's Guide for Explosion and Bombing Scene Investigation. This court in its opinion setting forth the reasons the motion for reconsideration of the motion for a <u>Franks</u> hearing would be denied explained that <u>United States v. Yusuf</u>, 461 F.3d 374, 383 (3d Cir. 2006), was the controlling decision in this case with respect to determining whether Zareck was entitled to a <u>Franks</u> hearing. At issue was Wintruba's affidavit of probable cause because Wintruba in that affidavit relied upon information provided to him by a sister governmental agency, i.e., the bomb squad. The Third Circuit Court of Appeals has explained:

> [A] defendant may still be able to show that an officer acted recklessly in relying on the information [provided to an affiant by a sister government agency] by meeting a two-pronged test. First, he must "show that the information would have put a reasonable official on notice that further investigation was required." <u>Id.</u> If the defendant can establish that this is so, he then "may establish that the officer acted recklessly by submitting evidence: (1) of a systemic failure on the agency's part to produce accurate information upon request; or (2) that the officer's particular investigation into possibly inaccurate information should have given the officer an obvious reason to doubt the accuracy of the information." <u>Id.</u>

<u>United States v. Humbert</u>, 336 F. App'x 132, 137 (3d Cir. 2009). Applying the foregoing law to the facts of this case, this court held that—even in consideration of Whitehurst's opinions—Zareck did not present any argument or evidence to show that Wintruba acted recklessly in relying upon the information provided by the bomb squad.  (ECF No. 186 at 12-13 (citing <u>Yusuf</u>, 461 F.3d at 383).) The court denied the motion for reconsideration on that basis.

**B.  Ground Twenty-Three in Zareck's § 2255 Motion**

In the twenty-third ground for relief in Zareck's § 2255 motion, he argued:

Trial counsel and appellate CJA counsel on direct appeal, were ineffective for failing to raise the issue that the affidavit for the search warrant was lacking the crime or crime element to have probable cause to search for evidence of a crime, which makes the search warrant invalid and requiring exclusion of the evidence discovered in defendant's home because no reasonable police officer could have believed in good faith that the search warrant was valid without probable cause for a particulary [sic] crime. Without a "commission" or crime element, it is invalid.

(ECF No. 348 at 34.) According to Zareck, his trial counsel and appellate counsel should have argued that Wintruba—as a "Pennsylvania municipal police officer required to know Pennsylvania State law and ordinances (including laws on fireworks)"—knew that Zareck taking apart fireworks and reassembling them was not criminal activity. (Id.) Zareck argued that if his counsel would have raised these issues before this court or the court of appeals, the outcome of the suppression hearing would have been different. (ECF No. 348 at 49-50; ECF No. 363 at 89-93.)

The court in the 2021 opinion explained that Zareck's arguments that the search warrant did not identify a crime were moot because the search warrant specified crimes, the evidence of which was believed to be in Zareck's home. The search warrant provided, in pertinent part:

VIOLATION OF (*Describe conduct or specify statute*):

PACC 2716 (a), PACC 2716 (b), PACC 3302 (a), PACC 3303 (2) & PACC 2705

(Search Warrant dated April 6, 2007 at 1.) The court explained that—in any event—the Allegheny County district justice had a substantial basis to conclude that there existed a fair probability that evidence of Zareck's alleged violation of, among other statutes, 18 Pa. Cons. Stat. § 2705 would be found in Zareck's home. Section 2705 provides:

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa. Cons. Stat. § 2705. This court explained:

As the court of appeals recognized, Zareck told the police that explosive

powder remained in his home and was not secured and members of the bomb squad believed the items in his home created "an obvious and immediate danger to the neighborhood." Zareck, 588 F. App'x at 101. The…judge clearly had a substantial basis upon which to conclude that there existed evidence in Zareck's home that he committed and continued to commit a violation of section 2705. Based upon the foregoing, Zareck did not show that his trial or appellate counsel provided him ineffective assistance. Any argument the search warrant was invalid because it did not specify a crime allegedly committed by Zareck is incorrect because the search warrant identified crimes evidence of which Wintruba believed would be found in Zareck's home.

(ECF No. 389 at 97-98.)

This court also addressed and rejected Zareck's argument that his counsels were ineffective because they did not request a Franks hearing to evaluate the mental state of Wintruba. (Id. at 98.) The court explained that Zareck did not point to any evidence to call into question Wintruba's reliance upon the information he received from the bomb squad, and, therefore, Zareck could not show that his counsels were ineffective for (a) failing to request an evidentiary hearing with respect to Wintruba's mental state, or (b) arguing that Wintruba entertained serious doubts about the accuracy of the information he received from the Allegheny County Bomb Squad.

In the pending motion for reconsideration of the 2021 opinion, Zareck raises two arguments: (1) Wintruba's affidavit failed to provide the Allegheny County district justice sufficient information upon which to conclude there was a fair probability evidence of a crime would be found in Zareck's home; and (2) the bomb squad—after exploding the device seized from Zareck's vehicle—made reckless statements to Wintruba about the device that were included in the affidavit of probable cause. Each argument will be addressed.

### C.  The Pending Motion for Reconsideration

#### 1.  Arguments about Wintruba's reliance upon the bomb squad

In the pending motion for reconsideration, Zareck again attacks the lawfulness of the

search warrant for his home issued by the Allegheny County district justice. Zareck argues that this court "overlooked" his argument that his trial and appellate counsel were ineffective because they did not argue that the affidavit of probable cause failed to describe any criminal act. (ECF No. 391 at 3.) Zareck explains that—based upon Whitehurst's affidavit and the bomb squad failing to test the exploded contents of the device seized from his vehicle—all references to "flash powder," "improvised explosive device," and the device being "hot and volatile" must be excised from the affidavit of probable cause in accordance with Franks. Whitehurst's affidavit provides, in pertinent part:

> Upon arrival on the scene the bomb squad technicians X-rayed the device and removed it to a safe location and rendered it safe (destroyed it) utilizing sheet explosives. I understand that the render safe procedure was determined to be necessary due to the appearance of the device and due to Officer Synan's assumption that the device contained energetic/explosive material.
>
> …
>
> Officer Synan's assumption that the device contained energetic material was in keeping with the appropriate concern of any first responder, that being the safety of personnel at the scene. Officer Synan did not have to know if the device contained energetic material in order to act in a responsible manner and his handling of this device indicates that he had been well trained in the proper handling of such crimes scenes. It is up to officers on the scene to make such decisions concerning safety.

(ECF No. 174-4 ¶¶ 4-5.) Zareck points to testimony from a state-court proceeding held on May 3, 2011, in support of his argument that members of the bomb squad acted recklessly when they told Wintruba the device seized from Zareck's vehicle was an improvised explosive device. (ECF No. 362-2 at 3.) In that testimony, a member of the bomb squad testified:

> [Q.] You indicated that you assumed based on your experience that there was something explosive in nature inside of the tube, is that correct?
>
> A. That's correct.
>
> Q. Did you ever conduct any testing to determine what was actually inside of the tube?

A. I did not.

Q. But ultimately you took this tube and placed it in a hole in the ground and used something else to explode it, is that correct?

A. I did that after it was x-rayed, yes.

(ECF No. 362-2 at 4.)

Zareck explains that all the crimes set forth in the search warrant are based upon him possessing an improvised explosive device and there being a fair probability that additional improvised explosive devices and flash powder would be found in his home. According to Zareck, once all references to "flash powder," "improvised explosive device," and the device being "hot and volatile" are excised from the affidavit of probable cause, the court could not find that the Allegheny County district justice had a substantial basis upon which to conclude there was a fair probability that evidence of a crime would be found in Zareck's home. According to Zareck, his counsels were ineffective because they did not raise these issues before this court, which would have produced a different outcome in this case, and, therefore, reconsideration of these issues is warranted.

As this court previously explained in the opinion denying Zareck's motion for reconsideration of his request for a <u>Franks</u> hearing and in the 2021 opinion, Whitehurst's opinions about the bomb squad's handling of the device seized from Zareck's vehicle, i.e., the bomb squad properly assumed that the device was an improvised device, the bomb squad properly detonated the device, and testing the device's remnants was required before the bomb squad would be able to definitively conclude that it was an improvised explosive device, do not show that the information known by Wintruba when he presented the affidavit of probable cause to the Allegheny County district justice would have put a reasonable official on notice that

further investigation was required. Yusuf, 461 F.3d at 378. Similarly, the state-court testimony that the bomb squad did not test the remnants of the device before telling Wintruba the device was an improvised explosive device does not satisfy Zareck's burden to make a preliminary substantial showing that the information known to Wintruba at the time he presented the affidavit of probable cause to the Allegheny County district justice would have put a reasonable official on notice that further investigation was required. Yusuf, 461 F.3d at 378.

There is no evidence of record to show that a reasonable officer or Wintruba, *who was subject to cross-examination by Zareck's counsel during the suppression hearings held in this case*, at the time he presented the affidavit of probable cause to the Allegheny County district justice would have known, knew, or should have known about the kind information provided by Whitehurst or that members of the bomb squad would have had to conduct the required testing after the device's detonation to conclude definitively that the device was an improvised explosive device. At the time the affidavit of probable cause to the Allegheny County district justice, Wintruba knew: (1) he removed a "crudely made" cylindrical device with a wick or fuse attached to it from the center console of Zareck's vehicle, (Hearing Transcript ("H.T.") 5/27/2010 (ECF No. 85) at 15, 30, 50, 79); (2) the fire chief described the device as a dangerous and explosive device, (id. at 21); (3) the bomb squad took control of the device, x-rayed the device, and detonated it in a "safe open grassy area[,]" (id. at 27, 28, 64); (4) the bomb squad members believed the device was an improvised explosive device based upon their experience and how the device was manufactured, sealed, and detonated (id. at 35-36); (5) the bomb squad told him that the device was an improvised explosive device, contained flash powder, and was extremely hot and volatile, unstable and dangerous, (id. at 27-28); and (6) Zareck became agitated when the fire chief said the device was an explosive device and Zareck protested that the

21

device was a firework purchased at Target that Zareck dissembled, (id. at 21-22).

Based upon the information known to Wintruba at the time he presented the affidavit of probable cause to the Allegheny County district justice, a reasonable official in Wintruba's position would not be on notice that further investigation into what the bomb squad told him was required. Under those circumstances, Zareck could not satisfy his burden to make a substantial preliminary showing that he was entitled to a Franks hearing, pursuant to Yusuf.[3] In other words, Zareck was not prejudiced by the alleged failures of his counsels. Zareck's counsel did not, therefore, provide him ineffective assistance of counsel with respect to this issue. Reconsideration of this court's 2021 opinion with respect to this issue is not warranted.

## 2. Arguments about the bomb squad's alleged reckless statements

In the pending motion for reconsideration, Zareck argues that he is entitled to reconsideration in this case because his trial and appellate counsel were ineffective in not arguing (to this court or to the court of appeals) that this court should have held a Franks hearing with respect to the bomb squad's (1) statements that Wintruba included in the affidavit of probable cause, and (2) omission that it did not conduct testing on the contents of the device seized from Zareck's vehicle after it was detonated, which was required to conclude definitively the device was an improvised explosive device.

As discussed above, this court relied upon Yusuf to conclude that Zareck was not entitled

---

[3]     Having determined that Zareck did not satisfy his burden to make a substantial preliminary showing with respect to the first part of the Yusuf test, i.e., whether "the information would have put a reasonable official on notice that further investigation was required," the court need not consider whether Zareck could satisfy his burden with respect to the second part of the Yusuf test, i.e., whether the bomb squad had a systemic failure to produce accurate information upon request, or Wintruba's particular investigation into possibly inaccurate information should have given him an obvious reason to doubt the accuracy of the bomb squad's information. Yusuf, 461 F.3d at 378.

to a Franks hearing because Zareck did not make the requisite showing to rebut the presumptive

reliability of the bomb squad's statements by pointing to evidence that Wintruba recklessly relied

upon the information provided by the bomb squad. Zareck cites to the following quote from

Franks in support of his argument that this court should not have limited its Franks inquiry to

Wintruba's statements as the affiant: "[P]olice…[cannot] insulate one officer's deliberate

misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity."

Franks, 438 U.S. at 163 n.6. Zareck, however, did not make any showing that the bomb squad

made any ***deliberate*** misstatement to Wintruba that Wintruba included in the affidavit of

probable cause. Neither Whitehurst's affidavit nor the state-court testimony from a member of

the bomb squad supports the conclusion that the bomb squad ***deliberately*** relayed material

falsehoods to Wintruba when members of the bomb squad told him: (1) the device seized from

Zareck's vehicle was an improvised explosive device; (2) the device was hot and volatile; and

(3) the device contained flash powder. Whitehurst, Zareck's expert, agreed with the bomb

squad's actions of assuming the device was an improvised explosive device and exploding the

device to ensure the safety of personnel on scene. There is also evidence of record that: (1) the

device was a "crudely made" cylindrical device with a wick or fuse attached to it from the center

console of Zareck's vehicle, (H.T. 5/27/2010 (ECF No. 85) at 15, 30, 50, 79); (2) the fire chief

described the device as a dangerous and explosive device, (id. at 21); (3) the bomb squad took

control of the device, x-rayed the device, and detonated it in a "safe open grassy area[,]" (id. at

27, 28, 64); (4) the bomb squad was "concerned about any type of fragmentation or any type of

instability on the outside[,]" (id. at 64-65); and (5) the bomb squad told Wintruba that the device

was an improvised explosive device, contained flash powder, and was extremely hot and volatile,

unstable and dangerous, (id. at 27-28).

The evidence of record with respect to the timing of Wintruba's stop of Zareck's vehicle and the execution of the search warrant for Zareck's home supports the conclusion that the bomb squad properly assumed the device was an improvised explosive device and there was a fair probability that improvised explosive devices would be found in Zareck's home. At approximately 6:20 p.m. on April 3, 2009, Wintruba conducted the traffic stop of Zareck's vehicle. (H.T. 5/27/2010 (ECF No. 85) at 56.) At approximately 6:25 p.m. on the same date, Zareck was placed in custody. (Id. at 56-57.) By 11:00 p.m. that evening, Wintruba authored the affidavit of probable cause and applied for a search warrant from the Allegheny County district justice. (Id. at 32-33.) At 2:00 a.m. on April 4, 2009, the Allegheny County district justice issued the search warrant. (Search Warrant, Gov't Ex. 2 at 1.) At approximately 3:00 p.m. on the same day, Wintruba met with the bomb squad and other members of law enforcement before executing the search warrant on Zareck's home. (H.T. 5/27/2010 (ECF No. 85) at 33-34.) Based upon the foregoing, approximately 21 hours lapsed from the traffic stop to the execution of the search warrant on Zareck's home. Wintruba was advised by the bomb squad that explosive materials likely would be found in Zareck's home. Zareck did not make any showing that the required testing of the remnants of the device seized from Zareck's vehicle after its detonation could have been performed within a reasonable time to ensure the safety of the community surrounding Zareck's home, which was in a row of row houses. Based upon the foregoing, the evidence of record is not sufficient to support the conclusion that the bomb squad deliberately, intentionally, or even recklessly made any misstatements to Wintruba, which should have been the focus of a Franks hearing. Zareck, therefore, cannot show that his counsel provided him ineffective assistance of counsel with respect to this issue.

Zareck argues, however, that that the bomb squad *intentionally* omitted from its officers'

24

discussion with Wintruba that: (1) the bomb squad—based upon its training and experience—*assumed* the device seized from Zareck's vehicle was an improvised explosive device; and (2) the bomb squad after the device was exploded did not perform the required tests to definitively determine whether the device was in fact an improvised explosive device. If the court held a <u>Franks</u> hearing with respect to these arguments, the court would be required to add the allegedly material omissions to the affidavit of probable cause and excise information in the affidavit of probable cause that contradicts those allegedly material omissions. Even assuming the bomb squad's allegedly deliberate omissions could be the focus of a <u>Franks</u> hearing, however, the allegedly deliberate omissions were not *material* to the Allegheny County district justice's determination of probable cause. If those allegedly deliberate omissions were added to the affidavit of probable cause, the statements contradictory to those omissions were excised from the affidavit of probable cause, and the previously excised language, which this court assumed was false, was also excised from the affidavit of probable cause, the affidavit would read, as follows:

> The Homestead Police Department was conducting a narcotic buy bust with in [sic] the borough of Homestead. Officers arrested Raymond J. Zareck with in [sic] his 2007 Chevrolet Malibu SDN at the Waterfront McDonalds. Officers observed a green fuse sticking out of the center console. ~~Officers are familier [sic] with this type of fuse which is consistent with an improvised explosive device.~~ Officers opened the center console & observed a pipe type object which was approximately 8″ long. The object was wrapped with tape & had glue on each end. A 12″ green fuse was sticking out of one end. ~~The device appeared to be a homemade pipe bomb.~~ Officers secured the area & contacted the Allegheny County Bomb Squad. Raymond Zareck was transported to WHPD then to HPB for processing. Zareck was mirandized and questioned ~~regarding the improvised explosive device.~~ Zareck stated to Ofc. Wintruba & Fusco that he purchases "Bumble Bee" commercial fireworks at Target Department Stores. Zareck then takes the fireworks to his residence at 3379 Parkview Ave. Pittsburgh, PA 15213 disassembles them and creates improvised explosive devices. Zareck stated that he takes the ~~flash~~ powder out of several commercial fireworks and condenses the ~~flash~~ powder into one cardboard tube. He then applies a fuse and glue to each end. Finally he tapes the tube up with cloth tape. Zareck is unsure how much additional ~~flash~~ powder is with in [sic] his residence, but did state that it is not in any type of fire

retardent [sic] cabinet nor does he have any type of automatic fire supression [sic] devices. Zareck's residence is a row house with multiple family residences on each side.

  Homestead Police and Fire Departments evacuated the Waterfront McDonalds & Get Go gas station prior to the bomb squads [sic] arrival. Allegheny County Bomb Squad arrived on scene & took possession of the device. The device was transported to a vacant area on the Waterfront & detonated. ~~Bomb Technicians Robert Synan & Mark Divelbiss advised officers that the device was infact [sic] an improvised explosive device. They went on to state that the flash powder Zareck is using in these types of devices is extremely volitile [sic] & dangerous.~~ **The bomb squad—based upon its training and experience—assumed the device seized from Zareck's vehicle was an improvised explosive device, which was hot and volatile. The bomb squad did not perform, after the device was exploded, the required tests to definitively determine whether the device was in fact an improvised explosive device.** In addition, depending on how much ~~flash~~ powder is located with in [sic] Zareck's residence this could prove to be a dangerous and hazardous condition for the surrounding neighbors & the public. The technicians Synan & Divelbiss stated that they have had prior experience with bomb makers of this type. They stated that these bomb makers do not make just one improvised explosive device, but infact [sic] make several at a[sic] one time.

  During officers [sic] interactions with Zareck he appeared to be unstable in his demeaner [sic] ~~and possesses a violent criminal history, with multiple weapon and drug charges~~. While being interviewed at HPD Zareck assaulted officers, attempted to escape & attempted to destroy evidence. Officers managed to subdue Zareck, but not before he destroyed one piece of evidence.

  Based on the above information and the advice of the Allegheny County Bomb Squad Technicians we respectfully request the issuance of a search warrant for the residence & curtilage located at 3379 Parkview Ave. Pittsburgh, PA 15213 for the safety of the public as a whole.

(Gov't Ex. 2 from the Suppression Hr'g (H.T. 5/27/2010 (ECF No. 85) at 31) (modified).)

  If (a) these arguments would have been made to this court, (b) the court would have added those omissions to Wintruba's affidavit of probable cause, (c) the statements contradictory to those omissions were excised from the affidavit of probable cause, and (d) the previously excised language, which this court assumed was false, was also excised from the affidavit of probable cause, the Allegheny County district justice would still have had a substantial basis upon which to

conclude that there existed a fair probability that evidence of a crime would be found in Zareck's home. In other words, the allegedly deliberate omissions were not material to the Allegheny County district justice's determination of probable cause. As illustrated above, the affidavit of probable would have provided that, among other things: (1) even though the bomb squad did not definitively determine the device was an improvised explosive device, the bomb squad based upon its training and experience believed the device to be an improvised explosive device, which was hot and volatile; (2) people who made improvised explosive devices made multiple at a time; and (3) Zareck did not take any precautions with respect to the materials used to make these devices in his home, which was a row house with multiple family residences on each side.

Zareck also cites decisions from courts within the Third Circuit to support his argument that statements by the bomb squad that were relied upon by Wintruba in the affidavit of probable of cause should have been subject to a Franks hearing. The facts of those decisions, however, are distinguishable from the facts of this case and do not provide a basis for reconsideration. For example, in United States v. Calisto, the Third Circuit Court of Appeals explained that if the conduct of the affiant of an affidavit of probable cause "was the only relevant conduct for the purpose of applying the teachings of Franks,…[the court] would place the privacy rights protected by that case in serious jeopardy." 838 F.2d 711, 714 (3d Cir. 1988). In support of the foregoing principle, however, the court of appeals quoted the portion of Franks cited by Zareck in his motion for reconsideration, which provides police cannot insulate an officer's "**deliberate** misstatement" via an affiant ignorant of the falsity of the statement. Id. In Calisto, the court found that the magistrate judge "may have been *intentionally* misled" by the officer who provided information to the affiant. The court did not make a finding with respect to the mental state of the officer who provided information to the affiant, however, because it found that his

misstatement was not material to the magistrate judge's finding of probable cause. Id. at 716; see also United States v. Meehan, No. CRIM.A. 11-0440, 2013 WL 1875821, at *8 (E.D. Pa. May 6, 2013) (relying upon Calisto and holding that because the defendant did not make a substantial showing that "affiants acted as part of an intentional scheme to deceive the magistrate[,]" he was not entitled to a Franks hearing).

The other decisions relied upon by Zareck are similarly distinguishable. See United States v. Brown, 631 F.3d 638, 650 (3d Cir. 2011) (holding the law enforcement officer who *prepared the affidavit* but did not sign it acted in reckless disregard of the truth, and, therefore, suppression of false portion of warrant application was warranted); United States v. Shields, 458 F.3d 269, 276 (3d Cir. 2006) (assuming in dictum that an agent acted in reckless disregard of the truth when he prepared a template containing erroneous factual assertions that other officers used in affidavits of probable cause, but not making a finding about the officer's mental state because the erroneous factual assertions were not material to the determination of probable cause).

The Third Circuit Model Jury Instructions support the conclusion that intentional or deliberate misstatements are required before a Franks hearing is held with respect to the actions of a sister government agency that supplied information for, but did not author, an affidavit of probable cause. The model jury instructions provide: "Shields and Yusuf might at first glance seem to be in tension, but they can be reconciled by focusing on whether each case involved a danger that government investigators colluded to launder a falsehood through an unwitting government affiant." Third Circuit Model Jury Instructions for Civil Rights Claims Under Section 1983 at 199, available at https://www.ca3.uscourts.gov/sites/ca3/files/4_Chap_4_July_2023.pdf (emphasis added). A finding of deliberate or intentional conduct could support a finding that a case involved a danger of collusion; indeed, it is unlikely that officers can *recklessly* collude. See LQD Bus. Fin.,

LLC v. Rose, No. 19 C 4416, 2022 WL 4109715, at *5 n.3 (N.D. Ill. Sept. 8, 2022) (explaining in the torts context that the Black's Law Dictionary definition of "collusion" "suggests that the parties must share an intention—and thus have knowledge—that the fiduciary will breach his duty"); In re Am. Cap. Equip., LLC, 688 F.3d 145, 158 (3d Cir. 2012) (defining collusion in the bankruptcy law context as "'[a]n agreement to defraud another or to do or obtain something forbidden by law'") (quoting Black's Law Dictionary (9th ed. 2009)).

In this case, Zareck argues that members of the bomb squad aided Wintruba or took part in drafting the affidavit of probable cause. The evidence of record shows that—in light of the perceived danger of the assumed-improvised explosive device, which was based upon the training and experience of the bomb squad—the bomb squad instructed Wintruba to obtain a search warrant for Zareck's home, and that members of the bomb squad helped Wintruba with the spelling of terms used in the affidavit of probable cause. (H.T. 5/27/2010 (ECF No. 85) at 16, 91).) As Whitehurst noted, however, there was nothing inappropriate in the assumptions of the bomb squad or in their detonating the device seized from Zareck's vehicle. (ECF No. 174-4 ¶ 5 (the "assumption…[by members of the bomb squad] that the device contained energetic material was in keeping with the appropriate concern of any first responder, that being the safety of personnel at the scene…[and they] did not have to know if the device contained energetic material in order to act in a responsible manner and his handling of this device indicates that he had been well trained in the proper handling of such crime scenes…[because] [i]t is up to officers on the scene to make such decisions concerning safety"). Under those circumstances, that members of the bomb squad instructed Wintruba to obtain a search warrant for Zareck's home and helped Wintruba with the spelling of words in the affidavit of probable cause, does not support a finding that members of the bomb squad intentionally, deliberately, or even recklessly provided falsehoods to Wintruba for

use in the affidavit of probable cause and colluded with Wintruba to launder falsehoods via the affidavit of probable cause.

**V. Conclusion**

As this court has previously explained, <u>Yusuf</u> is the controlling decision in this case because Wintruba in the affidavit of probable cause relied upon information provided to him by a sister government agency and was entitled to presume that information was reliable. Zareck did not point to any evidence or argument to make a substantial preliminary showing that the bomb squad's statements to Wintruba were the proper subject of a <u>Franks</u> inquiry. To the extent the bomb squad's deliberate omissions may be challenged under <u>Franks</u>, Zareck did not make a substantial preliminary showing that those allegedly deliberate omissions were material to the Allegheny County district justice's finding of probable cause. Based upon the foregoing, even if Zareck's counsels raised these arguments before this court or before the court of appeals, the court would have denied Zareck's request for a <u>Franks</u> hearing. In other words, Zareck did not satisfy his burden to show he was prejudiced by his trial or appellate counsels' allegedly ineffective assistance, and, therefore, manifest injustice will result if this court does not reconsider its decision denying his § 2255 motion. Zareck's motion for reconsideration under either Rule 52(b) or 59(e) will be denied.

**V.     Certificate of Appealability**

When a district court issues a final order denying a § 2255 motion, the court must also make a determination about whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination about whether a certificate should issue. <u>See</u> 3d Cir. LAR. 22.2.

When the district court denies a habeas petition on procedural grounds without

reaching the prisoner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v McDaniel, 529 U.S. 473, 484-85 (2000).

Based upon the motion, files and records of the instant case, and for the reasons set forth above, the court finds that petitioner did not show a denial of a constitutional right. Therefore, a COA should not issue.

An appropriate order will be entered.

BY THE COURT,

Dated: September 12, 2023          **/s/ JOY FLOWERS CONTI**
Joy Flowers Conti
Senior United States District Court Judge